## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | CIVIL NO. 1:16-CV-0411-CG-M |
| STORMEY D. BURROUGHS JACKSON, et al., | ) ) ) ) | |
| Defendants. | ) | |

## ORDER

This is an interpleader action filed by Plaintiff Metropolitan Life Insurance Company ("MetLife") for a determination of the proper payee(s) of life insurance proceeds Plaintiff is holding as administrator of an ERISA-regulated employee benefit plan.

The motions addressed in this Order are:

1) the Motion for Summary Judgment of Defendant Stormey Burroughs Jackson ("Jackson") (Docs. 62, 63 & 64), the Response of Defendants Marcia Burrell and Sherita Burrell (collectively "the Burrells") (Doc. 68), and Jackson's Reply (Doc. 71);

2) the Burrells' Motion for Partial Summary Judgment (Docs. 65), Jackson's Response (Doc. 69), and the Burrells' Reply (Doc. 75).

3) Jackson's Motion to Strike portions of the affidavits of Marcia Burrell ("M. Burrell"), Sherita Burrell ("S. Burrell"), and Shirley Ross Brooks

1

("Brooks") (Doc. 72) as well as those portions of the Burrells' Response to Jackson's reliance on those affidavits, the Burrells' Opposition to the Motion to Strike (Doc. 81), and Jackson's Reply (Doc. 83).

## I. Background

Edward L. Burrell ("Decedent") was a retiree from Fiat Chrysler Automobile US and a participant in the company's Basic Life Insurance Plan ("Plan"), an Employee Retirement Income Security Act ("ERISA") regulated employee benefit plan. Decedent was the father of the Burrells and the alleged father of Jackson. MetLife's records show that on October 3, 2003, Jackson was designated the sole primary beneficiary with a 100% share of Decedent's life insurance benefits. (Doc. 1, p. 3 ¶ 13). Decedent died on November 8, 2015, leaving $59,500 of life insurance benefits payable to the proper beneficiary designated under the terms of the Plan. (Doc. 1, p. 4 ¶ 14-15). Jackson paid for decedent's funeral at Andrews Funeral Home and on November 13, 2015 assigned benefits due from the life insurance benefits to Andrews Funeral Home in the amount of $6,879.43. (Doc. 1, p. 4 ¶ 16).

On November 16, 2015, Marcia Burrell ("M. Burrell") contacted Interpleader Plaintiff Metropolitan Life Insurance Company ("MetLife") Claims Department and identified herself as a child of Decedent. (Doc. 1, p. 4-5 ¶ 18). M. Burrell was informed she was not listed as a beneficiary on Decedent's Plan. (Doc. 1, p. 5 ¶ 18). M. Burrell believed Decedent's October 3,

2003 beneficiary designation was fraudulently completed. *Id*. On January 12, 2016, MetLife received Jackson's claim form for the Plan benefits. (Doc. 1, p. 4 ¶ 17).

On February 4, 2016, M. Burrell contacted MetLife Claims Department to dispute the beneficiary designation. (Doc. 1, p. 4-5 ¶ 18). MetLife received a letter from M. Burrell on February 9, 2016 and February 22, 2016 regarding the beneficiary designation. (Doc. 1, p. 5 ¶ 19). M. Burrell stated Jackson changed the beneficiary designation without Decedent's consent. *Id*. M. Burrell also listed her sister, S. Burrell, as Decedent's child. *Id*.

On March 29, 2016, MetLife received M. Burrell's claimant affidavit for the Plan benefits. (Doc. 1, p. 5 ¶ 20). M. Burrell signed under oath that she and S. Burrell are the sole children of Decedent. *Id*. MetLife received Jackson's claimant affidavit for the Plan benefits on April 15, 2016. (Doc. 1, p. 4 ¶ 17). MetLife is unable to determine whether a court would find Decedent's October 3, 2003 beneficiary designation as valid. (Doc. 1, p. 5 ¶ 21).

## II. Procedural History

On August 4, 2016, MetLife filed a Complaint in Interpleader against Jackson, M. Burrell, S. Burrell, and Andrews in the United States District Court for the Southern District of Alabama in the Southern Division (case no. 1:16-CV-00411). (Doc. 1). The Complaint asserts MetLife is unable to

determine the proper beneficiary under Decedent's benefits Plan without exposing MetLife to the danger of double liability. (Doc. 1, p. 6 ¶ 25). MetLife claims if Decedent's October 3, 2003 beneficiary designation is valid, the Plan benefits would be payable to Jackson and Andrews pursuant to the funeral home assignment. (Doc. 1, p. 5 ¶ 22). However, if the beneficiary designation is invalid, the Plan benefits would be payable to Decedent's children and potentially to Andrews, per the funeral home assignment, if Jackson was a beneficiary with the authority to assign Plan benefits. (Doc. 1, p. 6 ¶ 23).

On December 16, 2016, MetLife filed a Motion for Leave to Interplead Funds. (Doc. 32). MetLife sought to interplead $59,500.00 of ERISA regulated benefits under Decedent's Plan. *Id*. at p. 1. This Court granted MetLife's Motion for Leave to Interplead Funds on December 21, 2016. (Doc. 37). The funds were deposited into the Court Registry Interest ("CRIS") fund on December 27, 2016. (Doc. 39).

On July 27, 2017, Jackson filed a Motion for Summary Judgment and brief in support thereof on the grounds that there is a valid beneficiary form naming Jackson as sole primary beneficiary of the Plan benefits at issue in this action. (Doc. 64; Doc. 62). On July 28, 2017, the Burrells filed their Motion for Partial Summary Judgment and brief in support thereof as to Jackson's paternity (Doc. 65). On August 24, 2017, the Burrells filed their Response to Jackson's Motion for Summary Judgment. (Doc. 68). Along with other documentation, the Burrells included the affidavits of S. Burrell, M.

Burrell, and Brooks as supporting evidence with their motion. (Doc. 68-6; Doc. 68-7; Doc. 68-8).

On August 25, 2017, Jackson filed her Response in Opposition to the Burrells' Motion for Partial Summary Judgment. (Doc. 69). On September 7, 2017, Jackson filed her Reply Brief in Support of her Motion for Summary Judgment. (Doc. 71). Jackson also filed a Motion to Strike the Affidavits of M. Burrell, S. Burrell, and Brooks on September 7, 2017. (Doc. 72). On September 8, 2017, the Burrells filed their Reply to Jackson's Response to their Motion for Partial Summary Judgment. (Doc. 75). The Burrells filed their Response in Opposition to Jackson's Motion to Strike on September 21, 2017 (Doc. 81), and Jackson filed her Reply thereto on September 25, 2017. (Doc. 83).

### III. Jackson's Motion to Strike the Affidavits of Marcia Burrell, Sherita Burrell, and Shirley Ross Brooks.

#### A. Standard of Review for Affidavits in Support or Opposition of Summary Judgment

When a party presents affidavit(s) to support or oppose a motion for summary judgment, the affidavit "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4). If the affidavit does not satisfy the requirements of Federal Rule of Civil Procedure 56(c), "the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of

the motion; (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or (4) issue any other appropriate order." FED. R. CIV. P. 56(e).

The Court has noted that when affidavits are considered for summary judgment, they "cannot be conclusory, and must contain information that can be reduced to admissible form at trial." *Marable v. Marion Military Institute*, 906 F. Supp.2d 1237, 1249 (S.D. Ala. 2012); *See, e.g., Corwin v. Walt Disney Co.,* 475 F.3d 1239, 1249 (11th Cir.2007) ("Even on summary judgment, a court is not obligated to take as true testimony that is not based upon personal knowledge.") (citation omitted); *Leigh v. Warner Bros., Inc.,* 212 F.3d 1210 (11th Cir.2000) ("This court has consistently held that conclusory allegations without specific supporting facts have no probative value.") (citation omitted); *Rowell v. BellSouth Corp.,* 433 F.3d 794, 800 (11th Cir.2005) ("On motions for summary judgment, we may consider only that evidence which can be reduced to an admissible form."). Statements based only upon belief rather than personal knowledge must be disregarded. *See Marable*, 906 F.Supp.2d at 1250. Affidavits may not be "so riddled-through with irrelevant statements, conclusory assertions with no probative value, [and] inadmissible hearsay." *Id*.

"When an affidavit submitted in support of, or opposition to, a motion for summary judgment contains inadmissible evidence, the court may strike

the inadmissible portions of the affidavit and consider the rest." *Id.*; *See Lee v. National Life Assur. Co.*, 632 F.2d 524, 529 (5th Cir. 1980).

### B. Analysis

Jackson moves to strike portions of the affidavits of M. Burrell, S. Burrell, and Brooks because they contain conclusory allegations, speculation, and conjecture that lack any evidentiary foundation; they are immaterial or irrelevant; or they are hearsay. The Court examines each affidavit in turn.

### C. Affidavit of Marcia Burrell (Doc. 68-7)

Jackson contends that portions of M. Burrell's affidavit should be stricken because they contain conclusory allegations, speculation, and conjecture that lack any evidentiary foundation; they are immaterial or irrelevant; and they are hearsay.

Specifically, Jackson contends a portion of M. Burrell's affidavit is immaterial or irrelevant. M. Burrell asserts the following in paragraph 2 of her affidavit:

> I maintained a close relationship with my father until his death in 2015. On Father's Day in 2000, when I was only 18 years old, I rescued my father from a drug house. I was held at gunpoint and begged for my father's life. My father was forever grateful and called me every year on Father's Day to thank me for saving him. (Doc. 68-7 ¶ 2)

Federal Rule of Evidence 401 states, "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. However, this Court must not determine "the probative

value of any evidence presented to it, for this would be an unwarranted extension of the summary judgment device." *Allen-Sherrod v. Henry Cty. Sch. Dist.*, 248 Fed.Appx. 145, 147 (11th Cir. 2007) (citations omitted).

The primary issue surrounding this litigation is the validity of Decedent's beneficiary designation. (Doc. 62; Doc. 68). Jackson argues this portion of M. Burrell's affidavit is irrelevant because "an event between Decedent and Marcia Burrell over 17 years ago and Decedent's alleged gratefulness to Marcia Burrell has no bearing on the issue at hand." (Doc. 72, p. 3-4). In response, the Burrells argue "[t]he fact that the Decedent felt indebted to Marcia Burrell for saving his life makes it less probable that he would effectuate a change stripping her of her beneficiary rights." (Doc. 81, p. 1-2).

This Court will stop short of assessing the probative value of M. Burrell's assertion at this stage of the litigation. In doing so, this Court finds that M. Burrell's assertions in paragraph 2 of her affidavit have some tendency to make it more probable that Decedent would leave the policy to the Burrells. Though Jackson takes issue with the alleged event occurring "over 17 years ago," the beneficiary designation at the center of this litigation took place fourteen years ago. (Doc. 1, p. 3 ¶ 13). The relevant time frame is not the time between the onset of this litigation and M. Burrell's alleged event, but rather, the timing between the October 2003 beneficiary designation and the date of the incident M. Burrell discusses. Whether or not

Decedent was grateful or felt indebted to M. Burrell for three years preceding the beneficiary designation is relevant to the issue at hand. Accordingly, the Court finds paragraph 2 of M. Burrell's affidavit should not be stricken.

Additionally, Jackson objects to M. Burrell's statement in paragraph 3 that Decedent "did not change the beneficiary of his Chrysler life insurance policy in 2003 to Stormey D. Burroughs Jackson" because Decedent assured her "numerous times, both before 2003 and after 2003" that she was beneficiary of the policy. (Doc. 68-7 ¶ 3). Jackson argues that this portion is a conclusory allegation. Jackson notes M. Burrell's admission that M. Burrell was never identified as a beneficiary under Decedent's life insurance policy. (Doc. 72, p. 2).

In response, the Burrells contest that Jackson's argument is deceptive. The Burrells explain they were never listed as a "named" beneficiary under the policy, but they are residual beneficiaries in accordance with the terms of Decedent's Plan. (Doc. 81, p. 2). The Burrells argue they are residual beneficiaries because Decedent's Plan specifies that if Decedent did not designate a beneficiary, his benefits would be distributed to his children if he did not have a surviving spouse. (Doc. 63-1, p. 2; Doc. 63-1, p.60). The Burrells argue that Decedent was unmarried at the time of his death, and the beneficiary designation to Jackson is invalid so, therefore, the benefits should be awarded to them.

Though M. Burrell's assertion ("My father did not change the beneficiary") is based on personal knowledge of her conversations with Decedent ("I know this because my father assured me numerous times"), the conclusion she draws regarding Decedent's changing of the beneficiary is speculative. As such, M. Burrell's statement, "My father did not change the beneficiary of his Chrysler life insurance policy in 2003 to Stormey D. Burroughs Jackson" is conclusory and speculative and is due to be stricken. (Doc. 68-7, ¶ 3).

In addition, Jackson contends paragraph 3 of M. Burrell's affidavit should be stricken because it contains inadmissible hearsay. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801(c). Hearsay is only admissible if "the statement is not hearsay as provided by Rule 801(d) or falls into one of the hearsay exceptions enumerated in Rules 803, 804, and 807." *United States v. Baker*, 432 F.3d 1189, 1203 (11th Cir. 2005). "The general rule is that inadmissible hearsay cannot defeat a motion for summary judgment where there is no indication that it is reducible to a form that would be admissible at trial." *Riley v. Univ. of Alabama Health Serv. Found.*, 990 F.Supp.2d 1177, 1188 (N.D. Ala. 2014); *See Pritchard v. Southern Co. Services,* 102 F.3d 1118 (11th Cir.1996) (citations omitted). "An affidavit submitted in connection with a motion for summary judgment may contain hearsay statements that

would be admissible at the trial under exceptions to the hearsay rule." *Riley*, 990 F.Supp.2d at 1188 (N.D. Ala. 2014) (quoting *H. Sand & Co. v. Airtemp Corp.,* 934 F.2d 450, 454–55 (2nd Cir.1991).

Decedent's statements assuring M. Burrell "numerous times, both before 2003 and after 2003, that [she] was the beneficiary of the life insurance policy" are out-of-court statements. (Doc. 68-7, ¶ 3). The gist asserted in the statement – "that I was a beneficiary of the life insurance policy" – is being offered for its truth: that M. Burrell is indeed a beneficiary of the policy. Accordingly, the statement is hearsay.

The Burrells argue the statement is an exception to the hearsay rule under Federal Rule of Evidence 803(3) ("Rule 803(3)"). FED. R. EVID. 803(3). Rule 803(3) establishes an exception to hearsay whenever the declarant's statement is "a statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotion, sensory, or physical condition (such as mental feeling, pain, or bodily health." *Id*. The Burrells assert the statement shows Decedent's then-existing state of mind conveying his intent to never designate Jackson as the sole beneficiary. (Doc. 81, p. 2). The Court finds that the statement properly falls within this exception to the hearsay rule, and it could be reduced to admissible form at trial.

The Burrells also contend the statements in paragraph 3 qualify under the residual hearsay exception under Federal Rule of Evidence 807 ("Rule 807"). In relevant part, Rule 807 reads:

> Under the following circumstances, a hearsay statement
> is not excluded by the rule against hearsay even if the
> statement is not specifically covered by a hearsay
> exception in Rule 803 or 804:
> (a) the statement has equivalent circumstantial
> guarantees of trustworthiness;
> (b) it is offered as evidence of a material fact;
> (c) it is more probative on the point for which it is offered
> than any other evidence that the proponent can obtain
> through reasonable efforts; and
> (d) admitting it will best serve the purposes of these rules
> and the interests of justice.

FED. R. EVID. 807. The Burrells presented an argument for each requirement under Rule 807.

The Burrells contend Decedent's statement has equivalent guarantees of trustworthiness because Decedent made similar statements to S. Burrell and Brooks, as confirmed in their affidavits. (*See* Doc.68-6; Doc. 68-8). Furthermore, the Burrells assert the statements are clear evidence that Decedent did not effectuate the beneficiary change, which is a material fact in this case. (Doc. 81, p. 3). Additionally, the Burrells argue Decedent's statements are more probative than any other evidence because he is now deceased so there is simply no other evidence available. (Doc. 81, p. 3). The Burrells also argue admitting Decedent's statements will serve the best interest of justice because Decedent's intent was to have the Burrells benefit from the policy, and the beneficiary change was done via telephone which directly conflicts with the Plan requirements. (Doc. 81, p. 3).

The purpose of Rule 807, "the residual hearsay exception," is "to be used very rarely, and only in exception circumstances." *Rivers v. U.S.*, 777

F.3d 1306, 1312 (11th Cir. 2015) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1279 (11th Cir. 2009) (citations omitted). The primary question under a Rule 807 analysis revolves around the trustworthiness "of the declarant who originally made the statements." *Rivers*, 777 F.3d at 1314. "The rule asks not simply for circumstantial guarantees of trustworthiness, but for guarantees that are equivalent in significance to the specific hearsay exceptions enumerated in [Rules 803 and 804]." *Id*. The guarantees of trustworthiness must be "equivalent to cross-examined former testimony, statements under a belief of impending death, statements against interest, and statements of personal or family history." *United States v. Fernandez*, 892 F. 2d 976, 980 (11th Cir. 1989). Those exceptions to the rule against hearsay "have attributes of trustworthiness not possessed by the general run of hearsay statements that tip the balance in favor of introducing the information if the declarant is unavailable to testify." *Id*. The Eleventh Circuit noted in the *Rivers* case:

> [A] dying declaration is trustworthy enough to admit as evidence in certain types of cases because at the time the declaration is made, the declarant believes that she is about to die and the statement concerns the cause of her death – in other words, because of the particular circumstances surrounding the original utterance of the statement. By requiring hearsay admitted under the residual exception to have circumstantial guarantees of trustworthiness that are like the guarantees of the specific exceptions, Rule 807 is clearly concerned, first and foremost, about whether the declarant originally made the statements under circumstances that render the statements more trustworthy.

*Rivers*, 777 F.3d at 1314-15.

In the *Rivers* case, defendant Marcus Rivers' claimed ineffective assistance of counsel and filed a motion to vacate his sentence under 28 U.S.C. § 2255. *Id*. at 1307. Rivers' attorney, Brian McComb (McComb"), died before Rivers filed the motion. *Id*. Rivers' co-defendant's attorney, Valentin Rodriguez ("Rodriguez'), testified at an evidentiary hearing about the conversations Rodriguez had with McComb. *Id*. Though Rivers objected to Rodriguez's testimony, the district court permitted it under Rule 807. *Id*. The district court determined trustworthiness was established under Rule 807 because "[McComb's] statements [to Rodriguez] were being made to counsel for one of [Rivers'] co-defendants" and "such statements are trustworthy because [f]rank and forthright communication between counsel for co-defendants is expected when they are planning pretrial strategy, which was the case here." *Id*. at 1315.  On appeal, the Eleventh Circuit held that it was error to admit Rodriguez's testimony under Rule 807 because it lacked the "circumstantial guarantees of trustworthiness" required by the rule. *Id*. at 1308. Besides Rodriguez's testimony, the only other corroborating evidence offered was an email from McComb to the government stating McComb was "trying to get [Rivers] to accept a plea in this matter." *Id*.at 1316. The Eleventh Circuit noted, "The existence of corroborating evidence does not necessarily make hearsay evidence admissible under Rule 807. Rather, 'corroborating evidence must be extraordinarily strong before it will render

the hearsay evidence sufficiently trustworthy to justify its admission.'" *Id*. at 1316 (quoting *United States v. Lang*, 904 F.2d 618, 624 (11th Cir. 1990). "[F]rank and forthright communication," without more, "is insufficient to establish the equivalent circumstantial guarantees of trustworthiness that Rule 807 requires." *Id*. at 1315.

The Burrells argue Decedent's statements to M. Burrell are trustworthy because Decedent made similar statements to S. Burrell and Brooks, as confirmed in their affidavits. (Doc. 81, p. 3). The question is not whether S. Burrell and Brooks are telling the truth in their affidavits, but whether the hearsay statements made by Decedent contained circumstantial guarantees of trustworthiness. *See Rivers*, 777 F.3d at 1315. While evidence of Decedent's similar conversations is corroborating, it is not extraordinarily strong to constitute sufficient trustworthiness under Rule 807. If Decedent's intention were to designate the Burrells as his beneficiary, Decedent would have had every incentive to tell that to the Burrells and Brooks. However, if Decedent's intentions were to name Jackson the beneficiary, as Jackson alleges, Decedent would have every incentive to dissimulate. Under the facts present in this case, this Court will not assume one way or the other. Accordingly, the Burrells have failed to show Decedent's statements are equivalent to the amount of trustworthiness required under Rule 807.

Accordingly, the Court finds paragraph 3 of M. Burrell's affidavit should be stricken, in part. The first statement, "My father did not change

the beneficiary of his Chrysler life insurance policy in 2003 to Stormey D. Burroughs Jackson." should be stricken. (Doc. 68-7, ¶ 3). The truth asserted in the second statement, "[M]y father assured me numerous times, both before 2003 and after 2003, that I was a beneficiary of the life insurance policy." should not be stricken because it is an exception to the hearsay rule under Rule 803(3). (Doc. 68-7, ¶ 3).

Jackson also moves to strike M. Burrell's statement, "My father never spoke to me about the alleged change to his Chrysler life insurance policy because he did not know it had been changed." (Doc. 68-7 ¶ 4). Jackson argues the statement is an unsupported, conclusory allegation. In their response to Jackson's motion to strike, the Burrells do not proffer any additional evidence to support M. Burrell's statement. (Doc. 81, p. 2). In fact, the Burrells simply restate M. Burrell's assertion, "The Decedent told Marcia Burrell that she was a beneficiary because he was unaware that a beneficiary change had been made in 2003." (Doc. 81, p. 2). Personal knowledge goes beyond a party's beliefs or speculations. *Riley v. Univ. of Alabama Health Serv. Found.*, 990 F.Supp.2d 1177, 1187 (N.D. Ala. 2014); *Gen. Longshore v. Pate Stevedore*, 41 F.3d 668 (11th Cir. 1994) (holding that a party's belief does not satisfy the personal knowledge requirement because "[b]elief, no matter how sincere, is not equivalent to personal knowledge") (citing *Jameson v. Jameson*, 176 F.2d 58, 60 (D.C. Cir. 1949)). M. Burrell's assertion that Decedent "did not know [the policy] had been changed" is insufficient to

support a finding that she has personal knowledge about the matter. M. Burrell attempts to draw a conclusion regarding what Decedent knew. The statement is nothing more than a belief about Decedent's state of mind, and such a belief, no matter how sincere, does not equate to M. Burrell's personal knowledge. Accordingly, the Court finds the paragraph 4 of M. Burrell's affidavit should be stricken.

### D. Affidavit of Sherita Burrell (Doc. 68-7)

Jackson argues paragraph 2 of S. Burrell's affidavit should be stricken because the statement contains conclusory allegations, speculation, conjecture that lack any evidentiary foundation, and hearsay. (Doc. 68-6 ¶ 2). This assertion in paragraph 2 of S. Burrell's affidavit is the same assertion in paragraph 3 of M. Burrell's affidavit. (*See* Doc. 68-7 ¶ 3). The statement in M. Burrell's affidavit was stricken, in part, as conclusory and speculative. Accordingly, the Court finds the statement in paragraph 2 of S. Burrell's affidavit should be stricken, in part, for the same reasons as the statement in paragraph 3 of M. Burrell's affidavit.

Jackson also contends paragraph 3 of S. Burrell's affidavit should be stricken because it contains conclusory allegations, speculation, and conjecture that lack any evidentiary foundation declaration. (Doc. 68-6 ¶ 3). This assertion in paragraph 3 of S. Burrell's affidavit is the same assertion in paragraph 4 of M. Burrell's affidavit. (*See* Doc. 68-7 ¶ 4). The statement in M. Burrell's affidavit was stricken as conclusory, speculative, and lacking any

foundational support. Accordingly, the Court finds the statement in paragraph 3 of S. Burrell's affidavit should be stricken for the same reasons as the statement in paragraph 4 of M. Burrell's affidavit.

**E. Affidavit of Shirley Ross Brooks (Doc. 68-8)**

Jackson contends that portions of Brooks' affidavit should be stricken because they contain conclusory allegations, speculation, and conjecture that lack any evidentiary foundation, and they are hearsay.

Specifically, Jackson argues paragraph 5 of Brooks' affidavit is a conclusory and unsupported allegation. Brooks states, "In 2003 Stormey D. Burroughs Jackson lived with Edward L. Burrell. Stormey D. Burroughs Jackson always referred to Edward L. Burrell as 'Burrell.' During 2003, Stormey D. Burroughs Jackson had access to Edward L. Burrell's personal and financial information." Jackson argues this allegation "lacks evidentiary support and is based entirely on personal, unsupported statements." (Doc. 72, p. 8 ¶ 1). The Burrells argue in response that the evidentiary support for Brooks' argument is Brooks' assertion in paragraph 6:

> I know Stormey D. Burroughs Jackson had access to Edward L. Burrell's personal and financial information in 2003 because she called me in August 2003. During that conversation, she said she was reviewing Edward L. Burrell's financial business and she wanted to know why he was paying me $215.00 per month. I informed her that those payments were for child support arrearages. (Doc. 68-8, p. 2 ¶ 6).

The information Brooks provides in paragraph 6 transforms the allegation in paragraph 5 from conclusory to an assertion with evidentiary support. Accordingly, this Court finds that paragraph 5 should not be stricken.

Additionally, Jackson argues that Brooks' assertion in paragraph 9 is unsupported and conclusory. In support of her conclusory argument, Jackson contends Brooks' allegation – that Decedent "was very disturbed that [Jackson] had access to his personal information" (Doc. 68-8, ¶ 9) – is not supported by any record evidence. In response, the Burrells note that Brooks' affidavit is record evidence. (Doc. 81, p. 5). Affidavits are considered part of the record evidence, and the admissible portions of Brooks' affidavit, discussed *infra*, are evidentiary support for her assertion in paragraph 9.

Jackson also argues Brooks' assertions in paragraph 3 of her affidavit are hearsay. (Doc. 72, p. 10 ¶ 1). Brooks states:

> During many of these conversations, Edward L. Burrell informed me that he had not changed his beneficiary of his Chrysler life insurance policy since our divorce. He told me that he had not changed the beneficiary on his Chrysler life insurance policy because he wanted those benefits to go to his girls. Edward L. Burrell told me these things many times, both before 2003 and after 2003. (Doc. 68-8 ¶ 3).

Jackson argues the statements are inadmissible hearsay. (Doc. 72, p. 10 ¶ 1). The Burrells argue in response that Brooks' statements qualify as a hearsay exception under Rule 803(3) because they establish the Declarant's then-existing motive or intent. (Doc. 81, p. 6). The Burrells contend, "By assuring

Shirley Ross Brooks that the Burrells would benefit from the life insurance policy, the Decedent was conveying his intent to never designate Jackson as the sole beneficiary." (Doc. 81, p. 6). The statements in paragraph 3 of Brooks' affidavit properly fall within this exception to the hearsay rule, and they could be reduced to admissible form at trial. Furthermore, the following portions of Brooks' affidavit are also an exception to hearsay under Rule 803(3):

> He asked me to keep the access information secret so that no one could ever change his benefits. I kept the access information secret and never accessed the account after 2001. (Doc. 68-8 ¶ 4).

> After Stormey D. Burroughs Jackson called me the second time in 2003, I informed Edward L. Burrell about my conversations with her. He was very disturbed that Stormey D. Burroughs Jackson had access to his personal information and was inquiring about his financial affairs. He told me that she did not have his permission to do that. (Doc. 68-8 ¶ 9).

> [M]y numerous conversations with him over the years, which affirmed that the policy would benefit his girls. (Doc. 68-8 ¶ 10).

The Burrells also argue that paragraphs 3, 4, 9, and 10 qualify as residual hearsay exceptions under Rule 807. In support of their Rule 807 argument, the Burrells present essentially the same supporting assertions for Brooks' affidavit they presented for M. Burrell's affidavit. *Supra* p. 12-13. The Court incorporates its reasoning from the Rule 807 argument in M. Burrell's affidavit to the Rule 807 argument in Brooks' affidavit. *Supra* p. 12-16. Accordingly, the Burrells have failed to show Decedent's statements are

equivalent to the amount of trustworthiness required under Rule 807. Accordingly, although the statements in paragraphs 3, 4, 9, and 10 do not qualify as residual hearsay exceptions, they should not be stricken because they are exceptions to the rule against hearsay under Rule 803(3).

Jackson also argues paragraphs 5, 6, 7, and 11 are due to be stricken because they contain inadmissible hearsay. (Doc. 72, p. 10 ¶¶ 3-5, 8). The statements Jackson objects to are:

> Stormey D. Burroughs Jackson always referred to Edward L. Burrell as "Burrell." (Doc. 68-8 ¶ 5).

> During that conversation, she said she was reviewing Edward L. Burrell's financial business and she wanted to know why he was paying me $215.00 per month. (Doc. 68-8 ¶ 6).

> During that second conversation, she asked me for a copy of the divorce decree for me and Edward L. Burrell. (Doc. 68-8 ¶ 7).

> When Stormey D. Burroughs Jackson was in her 20s, she told me that she would spit on Edward L. Burrell's grave because she was jealous of his relationship with Marcia L. Burrell and Sherita N. Burrell. (Doc. 68-8 ¶ 11).

The Burrells argue paragraphs 5, 6, 7, and 11 are not hearsay because they are statements made by an opposing party under Federal Rule of Evidence 801(d)(2). FED. R. EVID. 801(d)(2). An opposing party is "an adversary in a legal proceeding." *Party Opponent*, BLACK'S LAW DICTIONARY (10th ed. 2014). Jackson is undeniably the Burrells' adversary in this proceeding, and as such, her statements are those of an opposing party.

Accordingly, paragraphs 5, 6, 7, and 11 of Brooks' affidavit should not be stricken because they are not hearsay.

Additionally, Jackson argues paragraph 10 of Brooks' affidavit should be stricken as an unsupported, conclusory allegation. (Doc. 72, p.8-9 ¶ 3). This assertion in paragraph 10 of S. Burrell's affidavit is essentially the same assertion in paragraph 3 of M. Burrell's affidavit and paragraph 2 of S. Burrell's affidavit. (*See* Doc. 68-7 ¶ 3; Doc. 68-6 ¶ 2). Those statements in M. Burrell's affidavit and S. Burrell's affidavit were stricken, in part, as conclusory and speculative. *Supra* p. 17. Accordingly, the Court finds paragraph 10 of Brooks' affidavit should be stricken in part. The first statement, "Edward L. Burrell never would have made Stormey D. Burroughs Jackson the sole beneficiary of his Chrysler life insurance policy." should be stricken as conclusory and speculative. (Doc. 68-8, ¶ 10) The truth asserted in the second statement, "[M]y numerous conversations with him over the years which affirmed that the policy would benefit his girls." should not be stricken because it is an exception to the rule against hearsay under Rule 803(3). (Doc. 68-7, ¶ 3).

Furthermore, Jackson argues paragraph 12 in Brooks' affidavit is due to be stricken because it is a conclusory and speculative allegation. (Doc. 72, p. 9 ¶ 4). Brooks asserts that "the only way Stormey D. Burroughs Jackson could have been named as the sole beneficiary of the Chrysler life insurance policy in 2003 is if she utilized her access to Edward L. Burrell's personal and

financial information to make the change without Edward L. Burrell's knowledge or consent." (Doc. 68-8 ¶ 12). The Burrells argue, "The Decedent told Shirley Ross Brooks that the Burrells were beneficiaries because he was unaware that a beneficiary designation had been made in 2003." (Doc. 81, p. 6). Brooks' statement and the Burrells' assertion in their response are too speculative. Brooks' argument is based upon a belief about what Jackson did, and the Burrells' argument is a belief about what Decedent knew. Those beliefs, no matter how sincere, do not equate to personal knowledge. Accordingly, the Court finds the paragraph 12 of Brooks' affidavit should be stricken.

## IV. Jackson's Motion for Summary Judgment and the Burrells' Partial Motion for Summary Judgment

### A. Standard of Review for Summary Judgment

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the

moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (footnote omitted)). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determination of the truth of the matter. Instead, evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). The mere existence, however, of any factual dispute will not necessarily compel denial of a motion for summary judgment; rather, only material factual disputes preclude entry of summary judgment. *Lofton v. Secretary of Dep't of Children and Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004).

### B. Analysis of Jackson's Motion for Summary Judgment

Jackson moves for summary judgment on the basis that the Burrells have failed to produce evidence to undermine Jackson as the sole beneficiary under the Plan. She first argues that the Plan must be strictly enforced. Additionally, Jackson alleges the Burrells have failed to produce any evidence that Jackson fraudulently procured her designation as the sole primary beneficiary.

### 1. Strict Enforcement of ERISA Plans

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v.*

*Delta Air Lines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490

(1983) (citations omitted). Employee benefit plans under ERISA must be

"established and maintained pursuant to a written instrument." 29. U.S.C. §

1102(a)(1). The written instrument must "provide for one or more named

fiduciaries who [...] have authority to control and manage the operation and

administration of the plan." *Id.* The fiduciary is responsible for "providing

benefits to participants and their beneficiaries." 29. U.S.C. § 1104(a)(1)(A)(i).

The Burrells do not dispute that the Plan is an ERISA-regulated

employee benefit plan funded by a life insurance policy issued by MetLife.

(Doc. 68, p. 6). Additionally, the Burrells agree that MetLife, as claim

fiduciary, must administer claims in accordance with ERISA and the

documents and instruments governing the plan. 29 U.S.C. § 1104(a)(1)(D).

ERISA requires plan administrators to follow strictly the amendment

procedures outlined in the plan's documents. 29. U.S.C. § 1104(a)(1)(D). One

of the Plan's documents is The Summary Plan Description ("SPD"). "As the

term 'summary plan description' suggests, the SPD is a document that

describes, in summary fashion, the relevant features of an employee benefit

plan." *Heffner v. Blue Cross and Blue Shield of Alabama*, 443 F.3d 1330, 1341

(11th Cir. 2006).

The SPD of Decedent's Plan contains a "Beneficiary Provisions"

section. The section in the SPD provides:

> You may designate or change your beneficiary at any time
> by calling Benefit Express at 1-888-456-7800 to request a

> form or go to http://resources.hewitt.com/daimlerchrysler
> to designate or change them online. Any change of
> beneficiary becomes effective the date you sign the form
> or your online change has been confirmed, unless the
> Insurance Carrier has paid a benefit before it receives the
> signed form." (Doc. 63-1, p. 2).

However, the amendment procedures outlined in the SPD do not contain the same information as the amendment procedures outlined in the Plan.

The amendment procedures in the Plan are located in the "Beneficiary" section under the Plan's "General Provisions." The section in the Plan provides:

> You may designate a beneficiary in Your application or
> enrollment form. You may change Your Beneficiary at any
> time. To do so, You must send a Signed and dated,
> Written request to the Policyholder using a form
> satisfactory to Us. Your Written request to change the
> Beneficiary must be sent to the Policyholder within 30
> days of the date You sign such request. You do not need
> your Beneficiary's consent to make a change. When We
> receive the change, it will take effect as of the date You
> Signed it. The change will not apply to any payment made
> in good faith by Us before the change request was
> recorded.

(Doc. 63-1, p. 60). The SPD and the Plan include different provisions with respect to changing beneficiaries. While the SPD incorporates two ways in which to effectuate a beneficiary change, the Plan includes succinct guidelines employees must follow. *Compare Liberty Life Ins. Co. of Boston v. Kennedy*, 358 F.3d 1295, 1300-01 (11th Cir. 2004).

An SPD must "be written in a manner calculated to be understood by the average plan participant" and "reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29. U.S.C. § 1022(a). "Under well-established ERISA law, language contained in a plan insurance policy may be questioned only if a 'direct conflict' exists with affirmative language appearing in a valid summary plan description." *Liberty Life Assur. Co. of Boston v. Kennedy*, 228 F.Supp.2d 1367, 1377 (N.D. Ga 2002) (quoting *Mers v. Marriott Int'l Group*, 144 F.3d 1014, 1023 (7th Cir. 1998)). "In the context of an employee benefit plan, a conflict would exist if the employee were somehow misled by the Summary Plan Description, which is a document intended to be accurate and comprehensive and which reasonably apprises an employee of his or her rights under the Plan." *Liberty Life Assur. Co. of Boston v. Kennedy*, 358 F.3d 1295, 1301 (11th Cir. 2004) (citing *McKnight v. S. Life & Health Ins. Co.,* 758 F.2d 1566, 1570 (11th Cir.1985)).

The SPD at issue in this litigation apprises the average plan participant of two ways in which a beneficiary change may become effective: (1) as of the date the plan participant signs the form, or (2) as of the date the online change has been confirmed. The affirmative language in the SPD – effectuating a beneficiary change as of the date an online change has been confirmed – directly conflicts with the language contained in the Plan, which

only allows beneficiary changes to take place as of the date the participant signed the written form.

The Eleventh Circuit has stated that the Summary Plan Description should be the controlling document if the SPD and the Plan conflict. *Liberty Life*, 228 F.Supp.2d at 1377 (citing *McKnight v. Southern Life & Health Ins. Co.*, 758 F.2d 1566 (11th Cir. 1985)). In *McKnight*, the Court noted, "It is of no effect to publish and distribute a plan summary booklet designed to simplify and explain a voluminous and complex document, and then proclaim that any inconsistencies will be governed by the plan. Unfairness will flow to the employee for *reasonably relying* on the summary booklet." *McKnight*, 758 F.2d at 1570. "[W]here a plan participant or beneficiary relies on a provision in the SPD that conflicts with the plan, he or she may enforce the terms of the SPD over the terms of the plan." *Heffner*, 443 F.3d at 1341-42.

The SPD clearly states a plan participant could change his/her beneficiary by requesting a form via telephone or by changing the beneficiary online. MetLife, as plan administrator, must strictly follow those amendment procedures. 29. U.S.C. § 1104(a)(1)(D). Jackson provided a computer screenshot showing Decedent's amendment to his beneficiary designation. (Doc. 63-4). The screenshot lists Jackson as the beneficiary of the policy; October 3, 2003 as the effective date of the policy; and the relation of Jackson to Decedent as "Child Beneficiary." (Doc. 63-4). The Burrells do not dispute

the identifying information included on the screenshot; the Burrells dispute the validity of the designation. (Doc. 68, p. 2 ¶ 4).

In response to Jackson's contentions, the Burrells provided email communications certified by MetLife's Custodian of Records. (Doc. 68-2). In the communications, MetLife revealed that Decedent designated his beneficiary via telephone. (Doc. 68-2, p. 2). Additionally, MetLife disclosed that it did not maintain an account history for beneficiary designations. (Doc. 68-2, p. 2).

In reviewing the materials on file with this Court, the undersigned finds the existence of a genuine issue of material fact in regard to Decedent's beneficiary designation. As the moving party, Jackson has met her initial burden of showing, by reference to the materials on file, that there are no genuine issues of material fact. Jackson has presented a computer screenshot, which may be considered conclusive evidence Decedent effectuated a valid beneficiary designation online in accordance with the terms of the SPD. Jackson satisfied her responsibility as the moving party, but the Burrells have sufficiently shown the existence of a genuine issue of material fact. The Burrells have produced disputing evidence that Decedent's designation was made by telephone. Evidence of the non-movant, the Burrells, is to be believed, and all justifiable inferences are drawn in their favor. In doing so, this Court recognizes the presence of a material factual dispute regarding the validity of the means by which the beneficiary

designation was made in accordance with strict enforcement of the Plan. Accordingly, the dispute presented here precludes the entry of summary judgment on the "strict enforcement" argument.

## 2. Jackson Fraudulently Procured Her Designation as Beneficiary

Jackson contests the Burrells' position that Jackson fraudulently procured her designation as Decedent's sole primary Beneficiary. (Doc. 62, p. 10). In their response to Jackson's argument of fraudulent procurement, the Burrells primarily rely on assertions made in their affidavits as well as the statements in Brooks' affidavit. (Doc. 68, p.8-9).

Fraudulent procurement of insurance "is provable as a defense in an action upon [an insurance] policy." *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 212 (1937) (citations omitted). Fraudulent procurement stems from fraudulent misrepresentations made to insurance companies. *See American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1052 (11th Cir. 2007) ("The ultimate goal of this enterprise was to induce insurers to pay benefits on policies that never should have issued, owing to fraudulent misrepresentations during the application process."). Accordingly, a party must show the presence of fraudulent misrepresentation(s) to prove fraudulent procurement.

The elements of fraudulent misrepresentation are: "(1) a misrepresentation of material fact, (2) made willfully to deceive, recklessly, without knowledge, or mistakenly, (3) which was justifiably relied on by the

plaintiff under the circumstances, and (4) which caused damage as a proximate consequence." *Mosley v. Wyeth, Inc.*, 719 F.Supp.2d 1340, 1346 (S.D. Ala. 2010) (citations omitted).

Jackson contends the Burrells "have absolutely zero supported, legitimate evidence to claim that the beneficiary designation is fraudulent." (Doc. 62, p. 11). Jackson argues that evidence of Decedent's substance abuse, the fact that he was not technologically savvy, Decedent's promises to take care of the Burrells, and statements about "who [Jackson] is as a person" are not valid evidence to show Jackson fraudulently procured the beneficiary designation. (Doc. 62, p. 11-12). This evidence does not prove Jackson misrepresented information in order to fraudulently procure the beneficiary designation. As the movant, Jackson has met her initial burden of showing that there are no genuine issues of material fact regarding Jackson's fraudulent procurement of the beneficiary designation.

The Burrells' argue in response, "As established herein, it was Decedent's intent that the Burrells receive the Plan benefits. The beneficiary identified by MetLife's computer screenshot is inconsistent with such intent." (Doc. 68, p. 8). In support of their argument, the Burrells rely on the following assertions: paragraphs 2 and 3 of S. Burrell's affidavit; paragraphs 3 and 4 of M. Burrell's affidavit; and paragraphs 2, 3, 6, 7, 8, 9, and 12 of Brooks' affidavit as support for their argument. Paragraphs 2 and 3 of S. Burrell's affidavit, paragraphs 3 and 4 of M. Burrell's affidavit, and

paragraph 12 of Brooks' affidavit were stricken in whole or in part. As such,

this portion of the Burrell's response relying on those assertions is also

stricken. Because Jackson's motion to strike was granted in part, this Court

will only consider the following affidavit assertions referenced in the Burrells

response:

> [M]y father assured my numerous times, both before 2003 and after 2003, that I was a beneficiary of the life insurance policy. (Doc. 68-6 ¶ 2; Doc. 68-7, ¶ 3).

> Edward L. Burrell and I were divorced in 1996. After our divorce, we remained in close contact and we spoke at length approximately 3-4 times per year until his death in 2015. (Doc. 68-8 ¶ 2).

> During many of those conversations, Edward L. Burrell informed me that he had not changed the beneficiary of his Chrysler life insurance policy because he wanted those benefits to go to his girls. Edward L. Burrell told me these things many times, both before 2003 and after 2003. (Doc. 68-8 ¶ 3).

> I know Stormey D. Burroughs Jackson had access to Edward L. Burrell's financial information in 2003 because she called me in August 2003. During that conversation, she said she was reviewing Edward L. Burrell's financial business and she wanted to know why he was paying me $215.00 per month. I informed her that those payments were for child support arrearages. (Doc. 68-8 ¶ 6).

> Stormey D. Burroughs Jackson called me again between August 2003 and October 2003. During that second conversation, she asked me for a copy of the divorce decree for me and Edward L. Burrell. I became irate during that call because I know Edward L. Burrell would not want Stormey D. Jackson inquiring into his personal or financial affairs. (Doc. 68-8 ¶ 7).

> I knew Edward L. Burrell from 1979 until his death in 2015. Despite his problems with addiction, Edward L.

> Burrell never relied on anyone for help and he never would have allowed someone else to handle his financial affairs. (Doc. 68-8 ¶ 8).

> After Stormey D. Burroughs Jackson called the second time in 2003, I informed Edward L. Burrell about my conversations with her. He was very disturbed Stormey D. Burroughs Jackson had access to his personal information and was inquiring about his financial affairs. He told me that she did not have his permission to do that. (Doc. 68-8 ¶ 9).

The Burrells also note that Jackson was living with Decedent at the same time of the alleged beneficiary change. (Doc. 68, p. 8).

In order to show the existence of a genuine issue of material fact, the Burrells must make a sufficient showing on an essential element of their case. *Clark*, 929 F. 2d at 608. The Burrells must make a sufficient showing that: (1) Jackson misrepresented a material fact to the plaintiff, MetLife, (2) Jackson's misrepresentation was made willfully to deceive, recklessly, without knowledge, or mistakenly, (3) MetLife justifiably relied on Jackson's misrepresentations under the circumstances, and (4) MetLife's reliance on Jackson's misrepresentations caused damage as a proximate consequence." *See Mosley*, 719 F.Supp.2d at 1346.

The crux of the Burrells' response is based on representations Decedent made to the Burrells and their mother, not representations Jackson made to MetLife. The other relevant evidence the Burrells have presented to show Jackson fraudulently misrepresented a material fact to MetLife is the email correspondence from MetLife's custodian of records. (Doc. 68-2). The

correspondence notes that Decedent's beneficiary designation was made via telephone. (Doc. 68-2, p. 2). The Burrells argue the Plan does not allow for beneficiary changes via telephone because it "is intended to prevent fraud on the Plan and to prevent beneficiary changes which are inconsistent with Decedent's wishes." (Doc. 68, p. 7). However, the Burrells have not presented sufficient evidence to connect Jackson to the phone call. While evidence that Jackson lived with Decedent in 2003 and inquired about Decedent's personal and financial affairs may be suspicious behavior, it is not proof that satisfies the elements of fraudulent misrepresentation. While crediting the evidence of the non-movant, the Burrells, this Court finds their evidence is insufficient to show Jackson misrepresented a material fact to MetLife. Furthermore, a justifiable inference drawn in the Burrells' favor does not lead this Court to conclude that Jackson fraudulently procured the beneficiary designation.

Accordingly, Jackson's request for summary judgment is due to be granted.

## B. Analysis of the Burrells' Motion for Partial Summary Judgment

In their partial motion for summary judgment, the Burrells present the issue of Jackson's paternity. Though the motion seeks to narrow issues at trial, this issue of paternity will not become ripe for review until (and if) a determination is made regarding the validity of the beneficiary designation.

The ripeness doctrine "keeps federal courts from deciding cases prematurely." *Meza v. U.S. Atty. Gen.*, 693 F.3d 1350, 1357 (11th Cir. 2012)

(quoting *United States v. Rivera*, 613 F.3d 1046, 1049 (11th Cir. 2010)).

Ripeness "protects courts from engaging in speculation or wasting their

resources through the review of potential or abstract disputes." *Id*. (internal

quotation marks omitted). An issue is not ripe for adjudication if it "rests

upon contingent future events that may not occur as anticipated, or indeed

may not occur at all." *Meza v. U.S. Atty. Gen*., 693 F.3d 1350, 1357 (11th Cir.

2012) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).

The Burrells argue their motion for partial summary judgment is due

to be granted because "the undisputed facts establish that Richard Burroughs

is the presumed father of Jackson, and Jackson has failed to produce

adequate evidence to rebut that presumption." (Doc. 65, p. 4). However,

deciding whether or not Jackson is the biological child of Decedent would be

premature at this stage of the litigation. This Court will not engage in

speculation or waste resources through review of the issue of Jackson's

paternity when the determination is contingent upon a conclusive factual

finding regarding the validity of Decedent's beneficiary designation.

Jackson argues this Court "should disregard the paternity issue"

because "a familial relationship is not a requirement for naming a beneficiary

under an ERISA-regulated plan." (Doc. 69, p. 10). While this Court recognizes

Jackson's contention that the relationship between Decedent and Jackson is

irrelevant (Doc. 69, p. 9), the undersigned is inclined to disagree with

Jackson's assertion that "Paternity has no bearing on the contractual

analysis of the [Plan] […]." (Doc. 69, p. 7). If a factual determination is made finding Decedent's beneficiary designation to Jackson as invalid, paternity would affect MetLife's determination of payment. The Plan provides:

> If there is no Beneficiary designated or no surviving
> Beneficiary at Your death, We will determine the
> Beneficiary according to the following order:
> 1. Your spouse, if alive;
> 2. Your child(ren), if there is no Surviving Spouse;
> 3. Your parent, if there is no surviving child;
> 4. Your sibling, if there is no surviving parent; […]

(Doc. 63-1, p. 60). If Decedent's beneficiary designation to Jackson were deemed invalid, MetLife would determine the proper beneficiary in the aforementioned order. As such, the issue of paternity is relevant to the contractual analysis of the Plan, but such relevancy is not ripe for review at this stage of the litigation.

## V. Conclusion

For the reasons stated above, the motion of Stormey D. Burroughs Jackson to strike the affidavits of Marcia Burrell, Sherita Burrell, and Shirley Ross Brooks (Doc. 72) is **GRANTED IN PART**, as follows:

1) The Court hereby **STRIKES** the following portions of the affidavit of Marcia Burrell:

> My father did not change the beneficiary of his Chrysler life
> insurance policy in 2003 to Stormey D. Burroughs Jackson. I
> know this because […]. (Doc. 68-7 ¶ 3).

> My father never spoke to me about the alleged change to his
> Chrysler life insurance policy because he did not know it had
> been changed. (Doc. 68-7 ¶ 4).

2) The Court hereby **STRIKES** the following portions of the affidavit

of Sherita Burrell:

> My father did not change the beneficiary of his Chrysler life
> insurance policy in 2003 to Stormey D. Burroughs Jackson. I
> know this because [...]. (Doc. 68-6 ¶ 2).

> My father never spoke to me about the alleged change to his
> Chrysler life insurance policy because he did not know it had
> been changed. (Doc. 68-6 ¶ 3).

3) The Court hereby **STRIKES** the following portions of the affidavit of

Shirley Ross Brooks:

> Edward L. Burrell never would have made Stormey D.
> Burroughs Jackson the sole beneficiary of his Chrysler life
> insurance policy. (Doc. 68-8 ¶ 10).

> "[T]he only way Stormey D. Burroughs Jackson could have been
> named as the sole beneficiary of the Chrysler life insurance
> policy in 2003 is if she utilized her access to Edward L. Burrell's
> personal and financial information to make the change without
> Edward L. Burrell's knowledge or consent." (Doc. 68-8 ¶ 12).

In all other respects, Jackson's motion to strike is **DENIED**.

Moreover, the Court hereby **GRANTS** Jackson's motion for summary

judgment (Doc. 64). All parties agree that the MetLife records show that

Jackson was the named beneficiary of the policy regardless of the method

used to change beneficiary, and because the Burrells are unable to

demonstrate that the change in beneficiary was fraudulently procured, the

designation of Jackson as the beneficiary prevails.

Finally, the Court **DENIES** the Burrells' motion for partial summary judgment (Doc. 65).

Designation of the distribution of the interpleaded funds, and Judgment will be entered by separate order.

**DONE** and **ORDERED** this 31st day of May, 2018.

/s/ Callie V. S. Granade
SENIOR UNITED STATES DISTRICT JUDGE